UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH N. AYER, MARTHA HARVEY, and LARRY MELTON, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> LIGHTSTONE VALUE PLUS REIT I, INC., LIGHTSTONE VALUE PLUS REIT LLC, LIGHTSTONE VALUE PLUS REIT II, INC., LIGHTSTONE VALUE PLUS REIT II LLC, LIGHTSTONE VALUE PLUS REIT III, INC., LIGHTSTONE VALUE PLUS REIT III LLC, YEHUDA I. ANGSTER, HOWARD E. FRIEDMAN, DAVID LICHTENSTEIN, ALAN RETKINSKI, and GEORGE R. WHITTEMORE, <br><br> *Defendants.* | Civil No. _____ <br><br><br> (Related to Class Action Complaint filed in the Superior Court of the State of New Jersey, Law Division, Ocean County, Docket No. OCN-L-002385-24) |

## NOTICE OF REMOVAL

Defendants Lightstone Value Plus REIT I, Inc., Lightstone Value Plus REIT LLC, Lightstone Value Plus REIT II, Inc., Lightstone Value Plus REIT II LLC, Lightstone Value Plus REIT III, Inc., Lightstone Value Plus REIT III LLC, Yehuda I. Angster, Howard E. Friedman, David Lichtenstein, Alan Retkinski, and George R. Whittemore (each individually a "Defendant," and collectively, the "Defendants"),[1] through undersigned counsel, file this notice of removal (the "Notice") on the grounds of federal diversity jurisdiction as amended by the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and in support state as follows:

---

[1]    Defendants are filing this Notice of Removal without waiver of their right to contest service, as discussed further below.

## I.    Parties

1.    Plaintiffs are alleged shareholders of Lightstone Value Plus REIT I, Inc., ("REIT I"), Lightstone Value Plus REIT II, Inc., ("REIT II"), and Lightstone Value Plus REIT III, Inc., ("REIT III" and collectively with REIT I and REIT II, the "REIT Defendants").  Plaintiffs purport to bring each of their claims on behalf of themselves, as well as a putative class.  (Compl. ¶¶ 1, 72–79).

2.    Defendants include the REIT Defendants, three advisor entities: Lightstone Value Plus REIT LLC, Lightstone Value Plus REIT II LLC, and Lightstone Value Plus REIT III LLC (collectively, the "Advisors"), and their directors in 2022: Yehuda I. Angster, Howard E. Friedman, David Lichtenstein, Alan Retkinski, and George R. Whittemore (collectively, the "Directors").

## II.    Procedural History

3.    On September 17, 2024, Plaintiffs filed a putative class action complaint in the Law Division of the New Jersey Superior Court, Ocean County, New Jersey ("State Court").  A copy of the Complaint (hereinafter "Compl.") is attached as Exhibit A.

4.    On October 9, 2024, a representative of nonparty The Lightstone Group received a copy of the complaint and summonses addressed to each Defendant (except for Alan Retkinski) at 1985 Cedar Bridge Avenue, Suite 1, Lakewood, NJ.  Attached as Exhibits B through K are copies of all summonses received by a representative of the nonparty The Lightstone Group.  Defendants reserve the right to contest whether delivery of the summonses as described above constituted valid service on any Defendant.

## III.    The Complaint's Allegations

5.    A REIT is a real-estate investment trust, a company that invests in and manages a portfolio of real estate and distributes income to its shareholders.  Plaintiffs filed a putative class

2

action lawsuit asserting that Defendants "induced" the shareholders of the REIT Defendants to vote in favor of the "2023 Charter Amendments" that became effective in 2023 and changed provisions in the REIT Defendants' respective charters.  (Compl. ¶¶ 1–2).

6.      Prior to the 2023 Charter Amendments, the charters for REITs II and III contained duration provisions that required, after a certain period, a vote on whether to: (i) extend the duration deadline; (ii) conduct a liquidation event (such as a public offering or liquidation of the real estate assets); or (iii) eliminate that provision of the charter.  (*Id.* ¶¶ 26, 54, 57).  Those duration provisions were set to trigger in 2024 or 2025.  (*Id.* ¶¶ 26, 55, 58).  REIT I had already removed the duration provision requirement through an amendment approved by shareholders in 2018.  (*Id.* ¶ 26).

7.      The 2023 Charter Amendments eliminated those duration provisions in REITS II and III, among other changes.  (*Id.* ¶¶ 55, 57).  In a notice to shareholders—which the Complaint cites—the proxy statement identified that the reason behind the proposed change was because it

> will allow us to engage in transactions that may be beneficial to us and our stockholders and will provide us more flexibility in pursuing various ways to provide liquidity to our stockholders. If the Elimination Amendment is approved, management will review the Company's liquidity requirements on an ongoing basis, to seek out beneficial transactions, including acquisitions, sales and dispositions, that could increase the liquidity used to pay dividends or otherwise (each a "Liquidity Event").

(*Id.* ¶¶ 55, 58).

8.      The shareholders voted and passed the 2023 Amendments, which became effective in late 2022 and 2023.  (*Id.* ¶¶ 63–65).

9.      The crux of Plaintiffs' Complaint is that the 2023 Amendments were made to the Plaintiffs' detriment and to preserve the "Subordinated Partnership Interests" held by Director David Lichtenstein that Plaintiffs pleaded were worth over $59 million.  (*Id.* ¶¶ 31, 32, 56).  Plaintiffs assert that the "true reason" to pass the 2023 Amendments was to avoid a liquidation of

the REITs because, according to Plaintiffs, the liquidation event would have caused the Subordinated Partnership Interests to be "worthless." (*Id.* ¶ 56).

10.     Plaintiffs assert four Counts: (1) breach of fiduciary duty against the Directors; (2) breach of fiduciary duty against the Advisors; (3) declaratory relief under Maryland law against the Directors and Advisors to unwind the 2023 Charter Amendments; and (4) breach of contract under Maryland law against all Defendants for allegedly breaching the REIT Defendants' pre-amendment charters. (*Id.* ¶¶ 80–111).

11.     Plaintiffs seek the following relief: (A) class action certification; (B) rescission and unwinding of the 2023 Charter Amendments; (C) a declaration that the Directors breached their fiduciary duties to the Plaintiffs and class; (D) a declaration that Defendants breached the terms of their charters and violated the implied duty of good faith and fair dealing; (E) compensatory damages in an unspecified amount; (F) costs, attorneys' fees, experts' fees; and (G) other equitable relief. (*Id.* at *ad damnum* clause).

**IV.    Legal Standard**

12.     "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

13.     As a result of CAFA, district courts have original jurisdiction of any civil action with the following requirements: (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) there are minimally diverse parties; and (3) the class consists of at least 100 or more members (the "numerosity requirement"). *See* 28 U.S.C § 1332(d)(2), (5)(B), (6); *see also Neale v. Volvo Cars of N. Am.*, *LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015).

14.     Once CAFA jurisdiction has been established, as it has here, the burden shifts to

the party objecting to federal jurisdiction to show that any exceptions should apply. *See Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009) (placing burden on party seeking remand under the local controversy exception under 28 U.S.C. § 1332(d)(4)(A)); *see also Rubin v. Mercer Ins. Grp., Inc.*, No. CIV.A. 10-6816 MLC, 2011 WL 677466, at *3 (D.N.J. Feb. 15, 2011) ("Removing Defendants correctly observe that the party objecting to the exercise of federal jurisdiction and seeking remand bears the burden of establishing that an exception to CAFA applies.").

## V.     Grounds for Removal Under CAFA

15.     Plaintiffs' putative class action fits within the definition of federal diversity jurisdiction as amended by CAFA because it: (A) involves a putative class action; (B) with at least $5,000,000 in controversy; (C) between minimally diverse parties; and (4) involves a putative class of least 100 or more members. *See* 28 U.S.C § 1332(d)(2), (5)(B), (6). Further, all procedural requirements for removal have been satisfied.

### A.     This Case Involves a Putative Class Action

16.     A "class action," as defined by CAFA, is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar [s]tate statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

17.     Plaintiffs filed this action as a purported class action pursuant to New Jersey Court Rule 4:32-1. (Compl. ¶ 73). Accordingly, this case involves a "class action" as defined by CAFA.

### B.     The Amount in Controversy Exceeds $5 Million

18.     Under the Class Action Fairness Act of 2005 ("CAFA"), the "claims of the individual class members shall be aggregated" in order to determine if the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2),

(d)(6).  Under these provisions, CAFA instructs "the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

19.     In calculating the value of the claim of each person who falls within the proposed class, a court starts by examining a plaintiff's complaint.  "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'"  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (quoting 28 U.S.C. § 1446(c)(2)).  Here, the plaintiffs' complaint does not demand a stated sum.  Thus, "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Id*. (citing 28 U.S.C. § 1446(c)(2)(A)).

20.     A notice of removal that states the amount in controversy may do so through a "short and plain" statement and "need not contain evidentiary submissions."  *Id.*

21.     If the plaintiffs contest the amount in controversy in a motion to remand, a court must translate categories of damages from the *ad damnum* clause into dollars for the purposes of the diversity statute.  *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398–99 (3d Cir. 2004) ("Unlike many instances in which a specific amount is requested, the *ad damnum* clause in this complaint is stated in terms of categories of damages. Because the diversity statute speaks in terms of dollars, we must translate the categories plaintiff cites into monetary sums.").

22.     Although the Complaint does not plead a specific amount of damages, Plaintiffs seek damages exceeding $5 million for the following four reasons at a minimum.  "[W]hen the state court complaint is indeterminate as to what the plaintiff believes is in controversy," and a plaintiff contests removal through a motion to remand, "[t]he inquiry, as in original actions, is not

whether the alleged injury actually caused damages in excess of the jurisdictional amount but whether a fact finder could conclude that it did." 14B Charles A. Wright *et al.*, Federal Practice and Procedure, § 3703 (5th ed. June 2024 update).

23. ***First***, the Complaint seeks to unwind the 2023 Charter Amendments, which Plaintiffs allege were passed solely to preserve one individual Defendant's Subordinated Participation Interests—the value of which Plaintiffs assert exceeds $59 million. (Compl. ¶ 31). Plaintiffs further assert that "these Subordinated Participation Interests would have been worthless if the Lightstone REITs had been or were liquidated during the 2024-2025 time frame or earlier…." (*Id.* ¶ 32). Plaintiffs seek a declaration rescinding the 2023 Charter Amendments, renewing the previous Charter provisions, and compensatory damages. (*Id.* ¶¶ 100, *ad damnum* clause). Notwithstanding the veracity of those allegations and reserving all rights and objections, Plaintiffs have therefore placed the Subordinated Participation Interests—which they allege are worth $59.8 million—in controversy and subject to their request for rescission and compensatory relief. (*Id.* ¶¶ 31, *ad damnum* clause).

24. ***Second***, the Complaint seeks to unwind the 2023 Charter Amendments which, if effectuated, Plaintiffs assert would require another shareholder vote to either: (i) extend the duration deadline; (ii) conduct a liquidation event (such as a public offering or liquidation of the real estate assets); or (iii) eliminate that provision. (*Id.* ¶¶ 26, 54, 57). Plaintiffs plead that the net asset value ("NAV")[2] in 2023 was $167.3 million for REIT II, and $128.4 million for REIT III. (*Id.* ¶¶ 68–69). Notwithstanding the veracity of those allegations and reserving all rights and

---

[2]    NAV refers to the company's total assets minus its total liabilities. *See* Net Asset Value, U.S. SECURITIES AND EXCHANGE COMMISSION, *available at* https://www.investor.gov/introduction-investing/investing-basics/glossary/net-asset-value (last accessed November 6, 2024).

objections, the Plaintiffs are asking a court to undo a contractual amendment and force a new shareholder vote that could potentially result in a liquidation of two REITs containing over $295 million in aggregate investments.

25.      ***Third***, the Complaint seeks compensatory relief for the fees paid as a result of the 2023 Charter Amendments.  The Complaint alleges that there were over $9.8 million in fees to the advisory entities in 2022, and over $7.2 million in fees in 2023. (*Id.* ¶¶ 27, 60, 66).  The Complaint seeks compensatory damages, *id.* at *ad damnum* clause, which "are designed to put the injured party in as good a position as he or she would have had if performance had been rendered as promised," *Cipala v. Lincoln Tech. Inst.*, 179 N.J. 45, 53 (2004) (quoted authority and brackets omitted).  Notwithstanding the veracity of those allegations and reserving all rights and objections, Plaintiffs' claim for compensatory relief puts in controversy the fees that accrued after the 2023 Amendments which, by Plaintiffs allegations, exceed $7.2 million and continue to accrue.  (Compl. ¶¶ 27, 60, 66).

26.      ***Fourth***, Plaintiffs request attorneys' fees in connection with this suit.  If the Court grants the requested relief, the claim for attorneys' fees would add to the amount in controversy. *See Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 227 (3d Cir. 2019) (holding that "attorneys' fees ... do count for CAFA's amount-in-controversy threshold").

27.      For the foregoing four reasons at a minimum, the amount in controversy exceeds $5 million.[3]

---

[3]    By establishing the statutory basis for removal under CAFA, Defendants do not in any way concede the allegations against them, the appropriateness of the proposed class definition, the remedies available to Plaintiffs, or the propriety of this action proceeding as a class action. Further, Defendants' statement that the matter in controversy is in excess of $5 million is not intended to constitute an admission or acquiescence that the types of damages and categories of relief sought by Plaintiffs are available for the claims pleaded or that Plaintiffs or the putative class are entitled to any relief.

**C.    There Are Minimally Diverse Parties**

28.    Under CAFA, the parties must be minimally diverse. 28 U.S.C § 1332(d)(2)(A). This is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.*

29.    One Plaintiff is a Nevada resident, and one Defendant is a Maryland resident. (Compl. ¶¶ 8(b), 16).  Accordingly, the minimal diversity requirement is met.

**D.    The Putative Class Consists of at Least 100 or More Members**

30.    Under CAFA, the proposed class needs to have at least 100 or more members.  28 U.S.C. § 1332(d)(5)(B).

31.    The Complaint pleaded that there are "[at] least thousands of persons … believed to be members of the putative Class."  (Compl. ¶ 74).  Defendants may rely on this admission from the Complaint.  *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014) ("Because Judon explicitly asserted in her complaint that there are 'hundreds of members,' Travelers was entitled to rely on this fact as an admission in favor of jurisdiction.").  Accordingly, the numerosity requirement has been met by virtue of Plaintiffs' allegations that there are "at least thousands" of potential class members.  (Compl. ¶ 74).

**E.    All Other Procedural Requirements Have Been Met**

32.    The requirements of 28 U.S.C. §§ 1441(a) and 1446(a) are satisfied because the State Court is located in Ocean County, New Jersey, which is within the territorial bounds of the U.S. District Court for the District of New Jersey, Trenton Vicinage.

33.    Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint is attached as Exhibit A, and copies of the process (which was served improperly) are attached as Exhibits B through K. There were no orders or other documents served on the Defendants.

34.    Pursuant to 28 U.S.C. § 1446(b), a notice of removal must be filed within thirty

days of service.[4]  This Notice is being filed on November 7, 2024.  On October 9, 2024, a representative of the nonparty The Lightstone Group received a copy of the complaint and summons addressed to each Defendant.  Defendants submit that this was insufficient to constitute valid service on any party.[5]  Notwithstanding the foregoing and without waiving any rights or defenses, the timing requirement under 28 U.S.C. § 1446(b) is satisfied since this Notice is being filed before proper service was effectuated.

35.      Pursuant to the "rule of unanimity" under 28 U.S.C. § 1446(b)(2)(A), undersigned counsel represents that all Defendants consent to the removal.  *See Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985) ("[W]hen there is more than one defendant, all must join in the removal petition.").

36.      Pursuant to 28 U.S.C. § 1446(d), this Notice is being given to counsel for all parties to this action via mail and email. Notice will also be provided to the state court via electronic filing. A copy of the notice to the State Court is attached as Exhibit L.

### RESERVATION OF RIGHTS

37.      By filing this Notice, Defendants do not waive any claims, rights, defenses, or objections which are all expressly preserved.  Defendants intend no admission of fact, law, or liability by filing this Notice, and expressly reserve all defenses, motions, and/or pleas.

---

[4]  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, through service or otherwise, after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.") (internal quotation marks omitted); *Di Loreto v. Costigan*, 351 F. App'x 747, 751 (3d Cir. 2009) ("[T]he removal period for a defendant does not begin to run until that defendant is properly served or until that defendant waives service.").

[5]  For example, the registered agent for REIT I, a Maryland corporation, is CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, Maryland.  But the complaint and summons as to REIT I was served on an employee of nonparty The Lightstone Group in New Jersey.  That form of service does not satisfy N.J. Court Rule 4:4-4(a).

**CONCLUSION**

**WHEREFORE**, the Complaint pending before the Superior Court of the State of New Jersey, Law Division, Ocean County is hereby **REMOVED** to the United States District Court for the District of New Jersey, Trenton Vicinage.

Dated:  November 7, 2024

_s/ Jeremy B. Stein_____

Jeremy B. Stein, Esq.
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA, LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
201-441-9056
jstein@hdrbb.com

John F. Baughman (*pro hac vice* motion forthcoming)
Andrew C. Bosse (*pro hac vice* motion forthcoming)
Alexander R. Kalyniuk (*pro hac vice* motion forthcoming)
**BAUGHMAN KROUP BOSSE PLLC**
One Liberty Plaza – 46th Floor
NEW YORK, NY 10006
(212) 548-3212

*Attorneys for Defendants*

# EXHIBIT A



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Donald J. Enright | (202) 524-4292  ext. | Ocean |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| Levi & Korsinsky LLP | |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 1101 Vermont Ave | Washington D.C. | DC | 20005 |

| Document Type | Jury Demand |
|---|---|
| Complaint | ■ Yes        ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Kenneth N. Ayer, Plaintiff | Ayer, et al., v. Lightstone Value Plus REIT I, Inc., et al. |

Case Type Number (See page 3 for listing)   999_____

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ■ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ■ No |
| Is this a professional malpractice case? | ☐ Yes | ■ No |

If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
regarding your obligation to file an affidavit of merit.

| | | |
|---|---|---|
| Related Cases Pending? | ☐ Yes | ■ No |

If "Yes," list docket numbers

| | | |
|---|---|---|
| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ■ No |
| Name of defendant's primary insurance company (if known) | ☐ None | ■ Unknown |

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
|---|

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?        ☐ Yes    ■ No
   If "Yes," is that relationship:
      ☐ Employer/Employee      ☐ Friend/Neighbor      ☐ Familial      ☐ Business
      ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees        ■ Yes    ☐ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

♿  Do you or your client need any disability accommodations?        ☐ Yes    ■ No
      If yes, please identify the requested accommodation:

   Will an interpreter be needed?        ☐ Yes    ■ No
      If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature:   /s/ *Donald J. Enright*

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |
| | Breach of Contract and Breach of Fiduciary Duties by Company Directors |

### Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 282 | Fosamax |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |
| 639 | Pinnacle Metal-on-Metal (MoM) Hip Implants |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

■ **Putative Class Action**          ☐ **Title 59**          ☐ **Consumer Fraud**

☐ **Medical Debt Claim**

**SUPERIOR COURT OF THE STATE OF NEW JERSEY**
**LAW DIVISION, OCEAN COUNTY**

| | |
|---|---|
| KENNETH N. AYER, MARTHA HARVEY and LARRY MELTON, on behalf of themselves and all others similarly situated, | Docket No. _____ |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| LIGHTSTONE VALUE PLUS REIT I, INC., LIGHTSTONE VALUE PLUS REIT LLC, LIGHTSTONE VALUE PLUS REIT II, INC., LIGHTSTONE VALUE PLUS REIT II LLC, LIGHTSTONE VALUE PLUS REIT III, INC., LIGHTSTONE VALUE PLUS REIT III LLC, YEHUDA I. ANGSTER, HOWARD E. FRIEDMAN, DAVID LICHTENSTEIN, ALAN RETKINSKI and GEORGE R. WHITTEMORE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs Kenneth N. Ayer, Martha Harvey, and Larry Melton ("Plaintiffs"), by and through their undersigned counsel, except for their own acts, which are alleged based on knowledge, allege the following on information and belief based upon the investigation by Plaintiffs' counsel, including a review of publicly available regulatory filings with the Securities and Exchange Commission ("SEC"), news articles, media reports, and other publicly available information.  Plaintiffs believe that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.    Plaintiffs bring this class action on behalf of themselves and all other similarly situated investors who own illiquid shares of common stock in Lightstone Value Plus REIT I, Lightstone Value Plus REIT II and Lightstone Value Plus REIT III (collectively referred to as the "Lightstone REITs"), and also assert claims against their advisory entities, further defined below as "Lightstone REITs Advisors" as well as the Lightstone REITs' Directors at relevant times.

2.    Defendants induced shareholders of the Lightstone REITs to approve amendments to their charters (the "2023 Charter Amendments") that have resulted in harms including the indefinite delay of liquidation or other liquidity events that would permit shareholders to monetize their investments, which in many instances date back more than ten years.  The 2023 Charter Amendments also curtail the fiduciary duties owed by the directors of the Lightstone REITs to shareholders, and limit shareholders' access to the Lightstone REITs' shareholder lists.

3.    To obtain approval of the 2023 Charter Amendments, Defendants actively misled the shareholders. Defendants misrepresented and omitted material facts concerning Defendant David Lichtenstein's direct financial interest in continuing the Lightstone REITs' duration indefinitely, in order to monetize his own subordinated equity investment in each of the Lightstone REITs (as further discussed below and referred to below as the "Subordinated Participation Interests").  The Subordinated Participation Interests, potentially worth $59.8 million or more, would have been worthless if the Lightstone REITs had liquidated during 2024-25 (as was required by the pre-amendment charters of REITs II and REIT III).  Defendants gave vague assurances that the elimination of the durational provisions (time limits) in the Lightstone REITs' then-operative charters ("Legacy Charters") via the 2023 Charter Amendments would somehow facilitate or hasten liquidity events, while failing to disclose their true intentions with respect to the 2023

Charter Amendments- which were to delay liquidation indefinitely and continue to operate the Lightstone REITs indefinitely unless and until Defendant Lichtenstein's subordinated equity investments could be monetized.

4.     Defendants also breached their fiduciary duties to Plaintiffs by recommending the 2023 Charter Amendments to shareholders, to whom they owed fiduciary duties under the Legacy Charters, as well as applicable law.  Defendants recommended that Plaintiffs and other Class members give up other valuable rights and protections without any clear plan or path to a liquidity event or other favorable outcome to the Lightstone REITs.   In addition to the durational provisions/times limits discussed above, the changes affecting shareholders' valuable rights that were abrogated by the 2023 Charter Amendments included the following:

(a)     Eliminating fiduciary duties that the boards owe to the Lightstone REITs and shareholders, and the directors' fiduciary duties to supervise the relationships of the Lightstone REITs and their external advisors, the Lightstone REITs Advisors;

(b)     eliminating certain protections in the event of a roll-up transaction, including appraisal rights for shareholders, and the ability to retain securities in their previous entity or receive cash in lieu of securities in another entity;

(c)     eliminating quorum requirements of at least 50% of all votes entitled to be cast at a stockholder meeting, and permitting reduction of the votes required for quorum to as little as 33% of votes entitled to be cast;

(d)     replacing provisions permitting any shareholder to receive a shareholder list for non-commercial purposes with a requirement that, to receive a copy of the shareholder list, a shareholder must have owned at least 5% of the outstanding stock of any class of shares for six months or more; and

3

(e)      expanding each REIT's ability to exculpate and indemnify officers and directors, and advance defense expenses in the case of litigation, to the maximum extent permitted by Maryland law.

5.      The 2023 Charter Amendments thus were approved by shareholders under false pretenses, work to shareholders' detriment, and serve to insulate Defendant Lichtenstein from any challenge to his indefinitely continuing to operate the Lightstone REITs and profit thereby. Plaintiffs now bring this class action seeking a declaration that the Director Defendants (as defined below) breached their fiduciary duties to Plaintiffs and the Class, compensatory damages, and rescission of the 2023 Charter Amendments.

## JURISDICTION AND VENUE

6.      The Superior Court has jurisdiction over this action pursuant to N.J. Const. Art. VI, §3, ¶ 2.  Defendants conduct business and committed certain of the alleged tortious acts in the State of New Jersey and have systematic and continuous contacts with the State of New Jersey. Defendants have sufficient minimum contacts with the State of New Jersey to make the exercise of personal jurisdiction over each Defendant proper under traditional notions of fair play and substantial justice.

7.      Venue is proper in this County under N.J. Court Rule 4:3-2 because several of the Defendants reside in Ocean County as of the time of the filing of this action, by virtue of maintaining their registered offices in Lakewood, New Jersey and/or actually doing business in Ocean County.

## THE PARTIES

8.      (a).    Plaintiff Kenneth N. Ayer is a citizen and resident of Virginia and held common shares of Lightstone Value Plus REIT II at all relevant times.

4

(b).    Plaintiff Martha Harvey is a citizen and resident of Nevada and held common shares of Lightstone Value Plus REIT I at all relevant times.

(c).    Plaintiff Larry Melton is a citizen and resident of Florida and held common shares of Lightstone Value Plus REIT III at all relevant times.

9.    Defendant Lightstone Value Plus REIT I ("REIT I") is a corporation organized and existing under the laws of the State of Maryland having its principal place of business in Lakewood, New Jersey.  REIT I was formerly known as "Lightstone Value Plus Real Estate Investment Trust, Inc." until it changed its name on September 16, 2021.

10.    Defendant Lightstone Value Plus REIT LLC is a limited liability company organized under the laws of Delaware having its principal place of business in Lakewood, New Jersey, and serves as the external advisor to REIT I under an Advisory Agreement dated April 22, 2005.

11.    Defendant Lightstone Value Plus REIT II ("REIT II") is a corporation organized and existing under the laws of the State of Maryland having its principal place of business in Lakewood, New Jersey.

12.    Defendant Lightstone Value Plus REIT II LLC is a limited liability company organized under the laws of Delaware having its principal place of business in Lakewood, New Jersey, and serves as the external advisor to REIT II under an Advisory Agreement dated February 17, 2009.

13.    Defendant Lightstone Value Plus REIT III ("REIT III") is a corporation organized and existing under the laws of the State of Maryland having its principal place of business in Lakewood, New Jersey.  As set forth above, REIT I, REIT II and REIT III are sometimes collectively referred to below as the "Lightstone REITs."

5

14.     Defendant Lightstone Value Plus REIT III LLC is a limited liability company organized under the laws of Delaware having its principal place of business in Lakewood, New Jersey, and serves as the external advisor to REIT III under an Advisory Agreement dated July 16, 2014.   As set forth above, Defendants Defendant Lightstone Value Plus REIT LLC, Lightstone Value Plus REIT II LLC and Lightstone Value Plus REIT III LLC are sometimes collectively referred to below as the "Lightstone REITs Advisors".

15.     Defendant Yehuda I. Angster ("Angster") is a natural person who is a citizen and resident of New Jersey.   Angster was a Director of Lightstone Value Plus REITs II and III at the time of the issuance and dissemination of the 2022 Proxy Statements (as defined below).   Angster has served as a Director of REIT I from 2015 until 2021, REIT II from 2021 to the present, and of REIT III from 2015 to the present.

16.     Defendant Howard E. Friedman ("Friedman") is a natural person who is a citizen and a resident of Maryland.   Friedman was a Director of REIT I at the time of the issuance and dissemination of the 2022 Proxy Statements (as defined below).   Friedman has been a Director of REIT I from 2021 to the present.

17.     Defendant David Lichtenstein ("Lichtenstein") is a natural person who is a citizen and resident of New York.   Lichtenstein was a Director of each of the Lightstone REITs at the time of the issuance and dissemination of the 2022 Proxy Statements (as defined below).   In addition, Lichtenstein is and was the Chairman and Chief Executive Officer of each of REITs I, II and III from 2004, 2008 and 2012 to the present, respectively.   Lichtenstein also owns and controls the external advisors of each of the Lightstone REITs (defined above as the "Lightstone REITs Advisors").

18.     Defendant Alan Retkinski ("Retkinski") is a natural person who is a citizen and a resident of New Jersey.   Retkinski was a Director of REIT I at the time of the issuance and dissemination of the 2022 Proxy Statements (as defined below).   Retkinski has been a Director of REIT I from 2019 to the present.

19.     Defendant George R. Whittemore ("Whittemore") is a natural person who is a citizen and resident of Virginia.  Whittemore was a Director of each of the Lightstone REITs at the time of the issuance and dissemination of the 2022 Proxy Statements (as defined below). Whittemore has served as a Director of REIT I from 2006 to the present, of REIT II from 2008 to the present, and of REIT III from 2013 to the present.  Defendants Angster, Friedman, Lichtenstein, Retkinski and Whittemore are sometimes collectively referred to below as the "Director Defendants" or, along with the Lightstone REITs and the Lightstone REITs Advisors, "Defendants".

## FACTUAL OVERVIEW

### Nature of Non-Traded REITs Such As The Lightstone REITs

20.     Defendant David Lichtenstein formed the Lightstone Group in 1988 and has served as its Chairman and Chief Executive Officer since that time.   Lightstone Group is reportedly one of the largest privately-held real estate companies in the United States, with holdings in 21 states. Lightstone Group reportedly has a portfolio of real estate valued at approximately $2 billion, including office, retail and industrial properties, residential units, and vacant lots of land.

21.     As one of its lines of business, the Lightstone Group has sponsored and sold through a network of independent broker dealers a series of five publicly registered, non-traded REITs marketed to "mom and pop" retail investors as a source of diversification and income.  These five

non-traded REITs include the Lightstone REITs (REITs I-III as defined above) as well as (nonparties) Lightstone Value Plus REIT IV and Lightstone Value Plus REIT V.

22.     Non-traded REITs are illiquid investment products because they do not trade on a public national securities exchange.  Accordingly, many investors in non-traded REITs come to find out too late that their shares cannot readily be resold.  Moreover, because of their illiquid nature, many non-traded REITs suffer from pricing inefficiency, in light of the fact that the net asset value (known as "NAV") of the shares is calculated by the investment sponsor itself.  In these circumstances investors are left to rely on the sponsor's estimated NAV per share (NAV) for information concerning the estimated value of their investments.  But in several recent instances, shares of non-traded REITs that have later listed on the New York Stock Exchange have proven to be worth far less than the sponsor's estimated NAV once the shares became freely traded.

23.     Although not traded on a national securities exchange, shares of public non-traded REITs must be registered with the SEC, as well as state securities regulators.  Similarly to exchange-traded REITs, non-traded REITS must distribute at least 90% of their taxable income to shareholders in order to maintain their REIT status for tax purposes.  Non-traded REITs are also required under Securities Exchange Act §15(b) to file periodic regulatory filings with the SEC.

24.     Investors in non-traded REITs typically have very limited options for the purposes of seeking liquidity and exiting some or all of their investment positions.  For example, investors in non-traded REITs may be able to redeem a portion of their shares directly with the sponsor, but then typically only during a certain time frame and only in a certain amount as agreed to by the sponsor.  Sometimes, investors may be able to tender their shares to a third-party investor who is willing to purchase their shares, but often at a disadvantageous price.  For example, one of the investments herein, REIT I, was previously the subject of a third-party tender offer to purchase its

8

shares for $6.55 a share in 2018, but had published an estimated NAV of $11.69 a share as of December 11, 2017, and later published an estimated NAV of $11.82 a share as of September 30, 2018.  Similarly, in late 2023, REIT II was the subject of a tender offer at $5.51 a share, despite the fact that its then-most recent estimated NAV (as of December 31, 2022) was $10.12 a share.

25.     To attempt to maximize returns (or mitigate losses), investors in non-traded REITs are often forced to wait for a so-called "liquidity event" to unlock liquidity on their investment. Typically, such a liquidity event occurs when the investment sponsor lists its shares on a public securities exchange or enters into a merger, events which may take 5-7 years or more after the time of the initial investment to materialize.  In the present case, shares in the Lightstone REITs have remained illiquid for the following periods since the termination of their public offerings: REIT I, since 2008; REIT II, since 2014 and REIT III, since 2017.  By comparison, a 2020 empirical study showed that non-traded REITs (among the 76 studied) that had achieved a liquidity event, whether by, *e.g.,* listing on an exchange, liquidation, or merger, had done so an average of 7.5 years after the completions of their initial offerings. *See* Mallet and McCann, *Further on the Returns to Non-Traded REITs*, accessible at [https://www.slcg.com/files/research-papers/Further%20on%20the%20Returns%20to%20Non-traded%20REITs.pdf.](https://www.slcg.com/files/research-papers/Further%20on%20the%20Returns%20to%20Non-traded%20REITs.pdf.)

26.     Under their Legacy Charters, under the auspices of which the REITs were sold to public investors, the Lightstone REITs were required to effectuate either an Extension Amendment (extending their duration) or a Plan of Liquidation by the following dates: REIT I, October 10, 2018; REIT II, September 20, 2024; and REIT III, March 31, 2025.  REIT I shareholders had approved an extension of the October 10, 2018 deadline back in 2017, resulting in the deletion of the durational provision set forth in Article XV of REIT I's charter.

27.     Non-traded REITs also have a very high fee and commission structure at the point of sale and thereafter, with typically between 7-10% of the capital committed (and sometimes as much as 15%) payable in underwriting commissions and other so-called organization and offering or "O&O" expenses.  Such commissions and fees act as an immediate drag on investment performance.  In the case of externally managed non-traded REITs such as the Lightstone REITs, significant annual fees payable to the advisory entity also act as a drag on performance.  The Lightstone REITs paid, respectively, the following fees to their advisory entities owned by Defendant Lichtenstein in 2022: REIT I, $5.9 million (NAV of $323.7 million), REIT II, $2.7 million (NAV of $173.8 million) and REIT III, $1.2 million (NAV of $134.1 million).  The Lightstone REITs thus paid $9.8 million in fees to the advisory entities owned and controlled by Defendant Lichtenstein in 2022 alone.

28.     Like other non-traded REITs, the Lightstone REITs were effectively required to follow a set of rules known as the North American Securities Administrators Association ("NASAA") Statement of Policy Regarding Real Estate Investments Trusts while offerings of shares to the public were ongoing.  Non-traded REIT sponsors like the Lightstone Group need to comply with these rules, commonly referred to as the "NASAA REIT Guidelines" because non-traded REITs remain subject to state law securities registration requirements and review by state securities regulators before they may be approved for sale to investors in each state.  The NASAA REIT Guidelines have been expressly adopted as requirements for registration by 25 U.S. states, rendering them a de facto set of binding rules for any nationwide non-traded REIT offering being sold to public investors.

29.     Therefore, as a practical matter, Lightstone Group needed to follow the NASAA REIT Guidelines, including specifically with respect to the provisions in the charters of the REITs

being sold to the public, so long as it continued to sell shares in the Lightstone REITs as publicly registered, non-traded REITs in a nationwide public offering.

30.     Relevant provisions of the NASAA REIT Guidelines that impose substantive requirements upon non-traded REITs, which were embodied in the Lightstone REITs' Legacy Charters, include (without limitation) the following:

(a).     Total annual operating expenses limited to no more than 2% of the REIT's average invested assets and 25% of the REIT's net income for the year (NASAA REIT Guidelines ¶ IV(D)(1);

(b).     Trustees (Directors) of the REIT "shall be deemed to be in a fiduciary relationship to the REIT and the SHAREHOLDERS**.** The TRUSTEES of the REIT shall also have a fiduciary duty to the SHAREHOLDERS to supervise the relationship of the REIT with the ADVISOR" (NASAA REIT Guidelines ¶ II(E) (capitalization in original);

(c).     Advisory contracts must be of not more than one year in duration and must be "terminable by a majority of the INDEPENDENT TRUSTEES, or the ADVISOR, on sixty (60) days written notice without cost or penalty (NASAA REIT Guidelines ¶ II(F) (capitalization in original); and

(d).     REITs may not indemnify independent directors for liability in the case of gross negligence or willful misconduct, nor may the REIT indemnify non-independent directors in the case of negligence or misconduct. (NASAA REIT Guidelines ¶ II(D)

***The Subordinated Participation Interests***

31.     Defendant Lichtenstein, indirectly through the Lightstone Group, LLC and three special purpose entities, holds substantial equity investments (defined above as the "Subordinated

11

Participation Interests"), potentially valued at a total of $59.8 million or more, in the Lightstone REITs.

32.    However, on information and belief, these Subordinated Participation Interests would be worthless if the Lightstone REITs had been or were liquidated during the 2024-25 time frame or earlier, as required by the Legacy Charters of REIT II and REIT III.  As described by each of the Lightstone REITs, the owner of each of the Subordinated Participation Interests receives money only if each REIT's common shares (senior in preference to the Subordinated Participation Interests) have achieved a stated cumulative, pre-tax non-compounded return over and above the initial offering price of $10.00 a share.  In the case of REITs I and II, the cumulative, pre-tax non-compounded return is 7%, and in the case of REIT III, 6%.

33.    REIT I describes the relevant subordinated participation interest as follows:

In connection with the Company's Offering, Lightstone SLP, LLC, an affiliate of the Company's Sponsor, purchased SLP Units in the Operating Partnership for an aggregate          of $30.0 million. These SLP Units, the purchase price of which will be repaid only after stockholders receive a stated preferred return and their net investment, may entitle Lightstone SLP, LLC to a portion of any regular distributions made by the Operating Partnership.

During each of the four calendar quarters during 2022 and during each of the first two calendar quarters of 2023, quarterly distributions declared and paid on the SLP Units were at a 7% annualized rate of return. Because the quarterly distribution declared by the Board of Directors on Common Shares for the quarterly period ending September 30, 2023 did not equate to at least an annualized rate of 7%, assuming a purchase price of $10.00 per share, no distributions were declared on the SLP Units for the quarterly period ending September 30, 2023. Until distributions on Common Shares are brought current to at least an annualized rate of 7% assuming a purchase price of $10.00 per share, no distributions will be declared on the SLP Units. Any future distributions on the SLP Units will always be subordinated until stockholders receive a stated preferred return.

During the year ended December 31, 2023, total distributions declared and paid on the SLP Units were $1.0 million and $1.6 million, respectively, and are part of noncontrolling interests. During the year ended December 31, 2022, total distributions declared and paid on the SLP Units were both $2.1 million, and are part of noncontrolling interests.

The SLP Units also entitle Lightstone SLP, LLC to a portion of any liquidating distributions made by the Operating Partnership. The value of such distributions will depend upon the net sale proceeds upon the liquidation of Lightstone REIT I and, therefore, cannot be determined at the present time. Liquidating distributions to Lightstone SLP, LLC will always be subordinated until stockholders receive a distribution equal to their initial investment plus a stated preferred return, as described below… .

(REIT I Annual Report on Form 10-K filed with the SEC on April 21, 2024).

34.     REIT II describes the relevant subordinated participation interest as follows:

In connection with our Offerings, the Sponsor and its wholly owned subsidiary, LGH, contributed (i) cash of $12.9 million and (ii) equity interests in the Brownmill Joint Venture valued at $4.8 million to the Operating Partnership in exchange for it issuing 177 Subordinated Profits Interests in the Operating Partnership to the Associate General Partner at a cost of $100,000 per unit, with an aggregate value of $17.7 million.

These Subordinated Profits Interests may entitle the Associate General Partner to a portion of any regular distributions that we make to our stockholders, but only after our stockholders have received a stated preferred return. However, there have been no distributions declared on the Subordinated Profits Interests for any periods after December 31, 2019. Any future distributions on the Subordinated Profits Interests will always be subordinated until stockholders receive a stated preferred return.

The Subordinated Profits Interests may also entitle the Associate General Partner to a portion of any liquidating distributions made by the Operating Partnership. The value of such distributions will depend upon the net proceeds available for distribution upon our liquidation and, therefore, cannot be determined at the present time. Liquidating distributions to the Associate General Partner will always be subordinated until stockholders receive a distribution equal to their initial investment plus a stated preferred return.

(REIT II Annual Report on Form 10-K filed with the SEC on March 27, 2024).

35.     REIT III describes the relevant subordinated participation interest as follows:

In connection with our Offering, the Special Limited Partner purchased 242 Subordinated Participation Interests in the Operating Partnership at a cost of $50,000 per unit, with an aggregate value of $12.1 million.

These Subordinated Participation Interests may entitle the Special limited Partner to a portion of any regular distributions that we make to our stockholders, but only after our stockholders have received a stated preferred return. However, from our

inception through December 31, 2023, there have been no distributions declared on the Subordinated Participation Interests. Any future distributions on the Subordinated Participation Interests will always be subordinated until stockholders receive a stated preferred return.

The Subordinated Participation Interests may also entitle the Special Limited Partner to a portion of any liquidating distributions made by the Operating Partnership. The value of such distributions will depend upon the net proceeds available for distribution upon our liquidation and, therefore, cannot be determined at the present time. Liquidating distributions to the Special Limited Partner will always be subordinated until stockholders receive a distribution equal to their initial investment plus a stated preferred return.

(REIT III Annual Report on Form 10-K filed with the SEC on March 27, 2024).

**The Legacy Charters and the Amended Charters**

36.     As of late 2022, each of the Lightstone REITs' charters contained substantial investor protection provisions consistent with the NASAA REIT Guidelines, and also contained requirements concerning the date by which each of the REITs had to be liquidated or otherwise achieve liquidity for investors.  As of late 2022, REIT II and REIT III faced looming deadlines that would have required that they take steps toward liquidation by 2024-25 if their duration was not extended.

37.     In the case of REIT I, its Legacy Charter provided that "[t]he Directors and the Advisor serve in a fiduciary capacity of the Company and have a fiduciary duty to the Stockholders of the Company, including, with respect to the Directors, a specific fiduciary duty to supervise the relationship of the Company with the Advisor."  The REIT I Legacy Charter also provided that any shareholder was entitled to inspect REIT I's shareholder list, or receive a copy of same by mail upon request.  The REIT I Legacy Charter also contained limitations on indemnification of Directors and officers and limitations on roll-up transactions consistent with the limitations in the NASAA REIT Guidelines.

38.     Most notably, REIT I's Legacy Charter contained a duration provision set forth in Article XV requiring as follows:

> In the event that Listing does not occur on or before the tenth anniversary of the Termination of the Initial Public Offering, then the Board must either (a) adopt a resolution that sets forth a proposed amendment to the Charter extending or eliminating this deadline (the "Extension Amendment"), declaring that the Extension Amendment is advisable and directing that the proposed Extension Amendment be submitted for consideration at either an annual or special meeting of the Stockholders, or (b) adopt a resolution that declares that a proposed liquidation and dissolution is advisable on     substantially the terms and conditions set forth in, or referred to, in the resolution (the "Plan of Liquidation"), and directs that the proposed Plan of Liquidation be submitted for consideration at either an annual or special meeting of the Stockholders.

39.     The foregoing language in Paragraph 38, above, would have required an Extension Amendment or Plan of Liquidation by October 10, 2018, ten years after the completion of REIT I's initial public offering on October 10, 2008.  REIT I stated in its Annual Report for the year ended December 31, 2018 as follows:

> On October 20, 2017, the Company filed a definitive proxy statement with the SEC pursuant to which it sought stockholder approval to amend its charter to remove the requirement that the Company must either list its stock on a national securities exchange or seek stockholder approval to adopt a plan of liquidation of the corporation on or before October 10, 2018 (the "Charter Amendment"). On December 11, 2017, the stockholders approved the Charter Amendment.

40.     This REIT I charter amendment eliminating the requirement that the Company must either list its stock on a national securities exchange or seek stockholder approval to adopt a plan of liquidation of the corporation on or before October 10, 2018 was effectuated via Articles of Amendment dated October 5, 2018.

41.     In the case of REIT II its Legacy Charter provided that "[t]he Directors serve in a fiduciary capacity to the Company and have a fiduciary duty to the Stockholders, including a specific fiduciary duty to supervise the relationship of the Company with the Advisor."  The

Legacy Charter also provided that any shareholder was entitled to inspect REIT II's shareholder list, or receive a copy of same by mail upon request. The Legacy Charter also contained limitations on indemnification of Directors and officers and limitations on roll-up transactions consistent with the limitations in the NASAA REIT Guidelines.

42. Most notably, REIT II's Legacy Charter contained a duration provision set forth in Article XV requiring as follows:

> In the event that Listing does not occur on or before the tenth anniversary of the Termination of the Initial Public Offering, then the Board must either (a) adopt a resolution that sets forth a proposed amendment to the Charter extending or eliminating this deadline (the "Extension Amendment"), declaring that the Extension Amendment is advisable and directing that the proposed Extension Amendment be submitted for consideration at either an annual or special meeting of the Stockholders, or (b) adopt a resolution that declares that a proposed liquidation of the Company is advisable on substantially the terms and conditions set forth in, or referred to, in the resolution (the " Plan of Liquidation"). If the Board seeks the Extension Amendment as described above and the Stockholders do not approve such amendment, then the Board shall adopt a Plan of Liquidation and commence an orderly liquidation of the assets of the Company pursuant to such Plan of Liquidation. In the event that Listing occurs on or before the tenth anniversary of the Termination of the Initial Public Offering, the Company shall continue perpetually unless dissolved pursuant to any applicable provision of the MGCL.

43. Absent amendment, the foregoing language in Paragraph 42, above, would have required an Extension Amendment or Plan of Liquidation by September 20, 2024.

44. In the case of REIT III its Legacy Charter provided that "[t]he Directors serve in a fiduciary capacity to the Company and have a fiduciary duty to the Stockholders, including a specific fiduciary duty to supervise the relationship of the Company with the Advisor." The Legacy Charter also provided that any shareholder was entitled to inspect REIT III's shareholder list, or receive a copy of same by mail upon request. The Legacy Charter also contained limitations on indemnification of Directors and officers and limitations on roll-up transactions consistent with the limitations in the NASAA REIT Guidelines.

45.     Most notably, REIT III's Legacy Charter contained a duration provision set forth in Article XV requiring as follows:

> If the Board has not determined to pursue a Liquidity Event on or before the eighth anniversary of the Termination of the Initial Public Offering (the "Liquidity Deadline"), then the Board must either (a) adopt a resolution that sets forth a proposed amendment to the Charter extending or eliminating the Liquidity Deadline (the "Extension Amendment"), declare that the Extension Amendment is advisable and direct that the proposed Extension Amendment be submitted for consideration at either an annual or special meeting of the Stockholders, or (b) adopt a resolution that declares that a proposed liquidation of the Company is advisable on substantially the terms and conditions set forth, or referred to, in the resolution (the "Plan of Liquidation") and direct that the proposed Plan of Liquidation be submitted for consideration at either an annual or special meeting of the Stockholders. If the Board seeks Stockholder approval of the Extension Amendment as described above and the Stockholders do not approve the Extension Amendment, then the Board shall seek Stockholder approval of the Plan of Liquidation as described above. If the Stockholders do not then approve the Plan of Liquidation, the Company shall continue its business. If the Board seeks Stockholder approval of the Plan of Liquidation as described above and the Stockholders do not approve the Plan of Liquidation, then the Board shall seek Stockholder approval of the Extension Amendment as described above. If the Stockholders do not then approve the Extension Amendment, the Company shall continue its business. If Listing occurs on or before the Liquidity Deadline, the Company shall continue perpetually unless dissolved pursuant to any applicable provision of the MGCL.

46.     The foregoing language in Paragraph 44, above, would have required an Extension Amendment or Plan of Liquidation by March 31, 2025 absent amendment.

47.     In late 2022, the Lightstone Group announced that it was seeking shareholder approval for amendments to the charters of each of the Lightstone REITs (defined above as the "2023 Charter Amendments"). In the cases of REIT II and REIT III, the 2023 Charter Amendments eliminated Article XV of the Legacy Charters, which provided for the Lightstone REITs having a limited duration.

48.     In each instance, the 2023 Charter Amendments also had the following effects, among others:

17

(a).    Eliminating fiduciary duties that the boards owe to the Lightstone REITs and shareholders and the directors' fiduciary duties to supervise the relationships of the Lightstone REITs and their external advisors;

(b).    eliminating of certain protections in the event of a roll-up transaction, including appraisal rights for shareholders, and the ability to retain securities in their previous entity or receive cash in lieu of securities in another entity; and

(c).    eliminating quorum requirements of at least 50% of all votes entitled to be cast at a stockholder meeting, and permitting reduction of the votes required for quorum to as little as 33% of votes entitled to be cast;

(d).    replacing provisions permitting any shareholder to receive a shareholder list for non-commercial purposes with a requirement that, to receive a copy of the shareholder list, a shareholder must have owned 5% of the outstanding stock of any class of shares for six months or more; and

(e).    expanding each REIT's ability to exculpate and indemnify officers and directors, and advance defense expenses in the case of litigation, to the maximum extend permitted by Maryland law.

***The False and Misleading Proxy Statements***

49.    In connection with the 2023 Charter Amendments, Defendants engaged in active and deliberate deception by authorizing the filing of materially incomplete and misleading definitive proxy statements with the SEC as well as materially incomplete and misleading "frequently asked questions" documents filed with the SEC as a proxy solicitation.

50.    In the case of REIT I, it filed a proxy statement soliciting the 2023 Charter Amendments on Form DEF14A on October 18, 2022 ("2022 REIT I Proxy"), and a supplemental

18

"FAQ" proxy statement on Form DEFA14A on November 9, 2022 ("2022 REIT I FAQs").  In the

case of REIT II, it filed a proxy statement soliciting the 2023 Charter Amendments on Form

DEF14A on October 18, 2022 (2022 REIT II Proxy"), and a supplemental "FAQ" proxy statement

on Form DEFA14A on November 14, 2022 ("2022 REIT II FAQs").  In the case of REIT III, it

filed a proxy statement soliciting the 2023 Charter Amendments on Form DEF14A on October 18,

2022 ("2022 REIT III Proxy"), and a supplemental "FAQ" proxy statement on Form DEFA14A

on November 15, 2022 (2022 REIT III FAQs").  The 2022 REIT I Proxy, 2022 REIT II Proxy,

and 2022 REIT III Proxy are referenced herein collectively as the "2022 Proxy Statements".  The

corresponding FAQ documents are sometimes referenced collectively below as the "2022 FAQs".

51.     The Director Defendants were obligated to carefully review the 2022 Proxy

Statements and the 2022 FAQs to ensure that they did not contain any material misrepresentations

or omissions before being filed and disseminated to the Lightstone REITs' shareholders.  However,

the 2022 Proxy Statements and the 2022 FAQs knowingly misrepresented and omitted material

information necessary for the Lightstone REITs' shareholders to make an informed decision

regarding the 2023 Charter Amendments, in violation of the Boards' fiduciary duties.

52.     The special meetings of the Lightstone REITs' shareholders to vote on the 2023

Charter Amendments (the "Special Meetings") were scheduled for December 8, 2022, at 9:00 a.m.

at 460 Park Avenue, 14th Floor, New York, New York. Therefore, it was imperative that the

material information omitted from the Proxy be disclosed prior to the Special Meetings, so the

Company's shareholders would properly exercise their corporate voting rights.

53.     The representations contained in the 2022 Proxy Statements and the 2022 FAQs

concerning the reasons for the charter amendments extending the duration of REIT II and REIT

III were rendered materially false and misleading by Defendants' concealing in the 2022 Proxy

Statements that Defendant Lichtenstein, indirectly through the Lightstone Group, LLC and three special purpose entities, holds the Subordinated Participation Interests potentially valued at a total of $59.8 million in the Lightstone REITs that, in each instance, would have been worthless if the Lightstone REITs had been liquidated during the 2024-25 time frame or earlier, as required by the Legacy Charters.

54.     In the case of REIT II, the 2022 REIT II Proxy stated as follows:

**Provision Regarding the Duration of the Company**

Our Charter states that in the event the Company does not list its common shares on a national stock exchange on or before the eight anniversary [sic] of the termination of the Company's initial public offering, which is March 31, 2025, then the Board of Directors must either (a) adopt a resolution that sets forth a proposed amendment to the Charter extending or eliminating this deadline or (b) adopt a resolution to liquidate and dissolve the Company.

Our Board of Directors has determined that it is in the best interest of the Company and its stockholders to amend the Charter to eliminate the deadline to liquidate and dissolve the Company (the "Elimination Amendment") at this time. Doing so will allow us to engage in transactions that may be beneficial to us and our stockholders and will provide us more flexibility in pursuing various ways to provide liquidity to our stockholders. If the Elimination Amendment is approved, management will review the Company's liquidity requirements on an ongoing basis, to seek out beneficial transactions, including acquisitions and sales, or dispositions, that could increase the liquidity used to pay
dividends or otherwise (each a "Liquidity Event").

55.     The 2022 REIT II FAQs stated as follows:

**Why is the Company seeking to eliminate the duration provision?**

Our charter states that in the event the Company does not list its common shares on a national stock exchange on or before the tenth anniversary of the termination of the Company's initial public offering then the Board of Directors must either (a) adopt a resolution that sets forth a proposed amendment to the charter extending or eliminating this deadline or (b) adopt a resolution to liquidate and dissolve the Company.

Our board of directors has determined that it is in the best interest of the Company and its stockholders to amend the charter to eliminate the deadline to liquidate and

20

dissolve the Company (the "Elimination Amendment") at this time. Doing so will allow us to engage in transactions that may be beneficial to us and our stockholders and will provide us more flexibility in pursuing various ways to provide liquidity to our stockholders. If the Elimination Amendment is approved, management will review the Company's liquidity requirements on an ongoing basis, to seek out beneficial transactions, including acquisitions, sales and dispositions, that could increase the liquidity used to pay dividends or otherwise (each a "Liquidity Event").

56.      The foregoing statements quoted in Paragraphs 54 and 55, above, and the REIT II 2022 Proxy and REIT II 2022 FAQs as a whole, were rendered materially false and misleading by Defendants' failure to disclose that the true reason for extending REIT II's duration was to avoid a liquidation or other liquidity event at a time and under circumstances when Defendant Lichtenstein's $17.7 million indirect investment in Subordinated Participation Interests in REIT II would have been worthless. In fact, only by substantially extending or eliminating the duration provision could Lichtenstein preserve the millions of dollars he hoped to receive from his Subordinated Participation Interests. This was the primary (but concealed) motivation for eliminating the duration provision. The REIT II 2022 Proxy Statement's language quoted in Paragraph 54, above, was also false in that the true date by which REIT II was required to effectuate either an Extension Amendment (extending its duration) or a Plan of Liquidation was in fact September 20, 2024 (not March 31, 2025 as stated) under its Legacy Charter.

57.      In the case of REIT III, the 2022 REIT III Proxy stated as follows:

**Provision Regarding the Duration of the Company**

Our Charter states that in the event the Company does not list its common shares on a national stock exchange on or before the eight anniversary of the termination of the Company's initial public offering, which is   March 31,   2025,   then   the Board of Directors must either (a) adopt a resolution that sets forth a proposed amendment to the Charter extending or eliminating this deadline or (b) adopt a resolution to liquidate and dissolve the Company.

Our Board of Directors has determined that it is in the best interest of the Company and its stockholders to amend the Charter to eliminate the deadline to liquidate and

21

dissolve the Company (the "Elimination Amendment") at this time. Doing so will allow us to engage in transactions that may be beneficial to us and our stockholders and will provide us more flexibility in pursuing various ways to provide liquidity to our stockholders. If the Elimination Amendment is approved, management will review the Company's liquidity requirements on an ongoing basis, to seek out beneficial transactions, including acquisitions and sales, or dispositions, that could increase the liquidity used to pay dividends or otherwise (each a "Liquidity Event").

58.     The REIT III 2022 FAQs stated as follows:

**Why is the Company seeking to eliminate the duration provision?**

Our charter states that in the event the Company does not list its common shares on a national stock exchange on or before the eighth anniversary of the termination of the Company's initial public offering, then the Board of Directors must either (a) adopt a resolution that sets forth a proposed amendment to the charter extending or eliminating this deadline or (b) adopt a resolution to liquidate and dissolve the Company.

Our board of directors has determined that it is in the best interest of the Company and its stockholders to amend the charter to eliminate the deadline to liquidate and dissolve the Company (the "Elimination Amendment") at this time. Doing so will allow us to engage in transactions that may be beneficial to us and our stockholders and will provide us more flexibility in pursuing various ways to provide liquidity to our stockholders. If the Elimination Amendment is approved, management will review the Company's liquidity requirements on an ongoing basis, to seek out beneficial transactions, including acquisitions, sales and dispositions, that could increase the liquidity used to pay dividends or otherwise (each a "Liquidity Event").

59.     The foregoing statements quoted in Paragraphs 57 and 58, above, and the REIT III 2022 Proxy and REIT III 2022 FAQs as a whole were rendered false, misleading and/or incomplete by Defendants' failure to disclose in the REIT III 2022 Proxy that the true reason for extending REIT III's duration were to avoid a liquidation or other liquidity event at a time and under circumstances when Defendant Lichtenstein's $12.1 million indirect investment in Subordinated Participation Interests in REIT III would have been worthless.

60.     The 2022 Proxy Statements and 2022 FAQs are also rendered materially false, misleading and incomplete by failing to disclose that a substantial factor in Defendants' decisions

to recommend the 2023 Charter Amendments was their motivation to continue the duration of the Lightstone REITs indefinitely, both so that Defendant Lichtenstein could attempt to monetize his indirect Subordinated Participation Interests at a later date, and so that the advisory entities of the Lightstone REITs owned by Lichtenstein could continue to collect fees indefinitely.  The Lightstone REITs thus paid $9.8 million in fees to the advisory entities owned and controlled by Defendant Lichtenstein in 2022 alone, and $7.2 million in 2023, and subsequent events show that Defendants have taken no steps whatsoever toward liquidity events for the Lightstone REITs in the nearly two years since the Defendants announced their recommendation of the 2023 Charter Amendments.

61.     Finally, the 2022 Proxy Statements and 2022 FAQs were also rendered materially false, misleading and incomplete by failure to disclose Defendant Lichtenstein's substantial conflicts of interest as described above.

62.     Without the information described above, the Lightstone REITs' shareholders were unable to fully understand the reasons for, and likely implications of, the 2023 Charter Amendments and the conflicts of interests underpinning the proposed elimination of the duration provision, and were thus never allowed to cast informed votes.  Defendant misstatements and omissions of fact significantly altered the total mix of information available to the Lightstone REITs' shareholders.

***Adoption of the 2023 Charter Amendments***

63.     Shareholders of REIT I passed the 2023 Charter Amendments in a vote at the Annual Meeting on December 8, 2022.  The 2023 Charter Amendments became effective on December 21, 2022.

64.     Shareholders of REIT II failed to pass the 2023 Charter Amendments in a vote at the Annual Meeting on December 8, 2022 because there were insufficient votes cast.  After an extension of time, in which REIT II reconvened its Annual Meeting on January 17, 2023, the 2023 Charter Amendments were passed and became effective as to REIT II on January 19, 2023.

65.     Shareholders of REIT III also failed to pass the 2023 Charter Amendments in a vote at the Annual Meeting on December 8, 2022 because there were insufficient votes cast.  After an extension of time, in which REIT III reconvened its Annual Meeting on January 17, 2023, shareholders passed the 2023 Charter Amendments.  The 2023 Charter Amendments became effective as to REIT III on January 26, 2023.

***Current Status of the Lightstone REITs***

66.     With the deadlines to effectuate either an Extension Amendment (extending their duration) or a Plan of Liquidation by 2024-25 (in the cases of REIT II and REIT III), and emboldened by the lower standards of conduct for Directors set forth in the 2023 Charter Amendments, Defendants have simply allowed the Lightstone REITs to languish, with the Lightstone REITS Advisors owned by Defendant Lichtenstein collecting over $7 million in fees for managing the Lightstone REITs in 2023, with no end in sight.

67.     The estimated NAVs of the Lightstone REITs have also languished. REIT I described its NAV as follows in its Annual Report on Form 10-K for the year ended December 31, 2023:

> On March 22, 2024, our Board of Directors determined and approved our estimated NAV of $303.8 million and resulting estimated NAV per Share of $11.73, after allocations of value to the SLP units in the Operating Partnership, held by Lightstone SLP, LLC, an affiliate of our Advisor, assuming a liquidation event, both as of December 31, 2023. From our inception through the termination of our Offering on October 10, 2008, Lightstone SLP, LLC, an affiliate of our Advisor, contributed cash of $30.0 million in exchange for 300 SLP Units, at a cost of $100,000 per unit. The purchase price of the SLP Units will be repaid only after

24

stockholders receive a stated preferred return and their net investment. Our estimated NAV and resulting NAV per Share are based upon the estimated fair values of our assets and liabilities as of December 31, 2023 and are effective as of March 22, 2024.

68.     REIT II described its NAV as follows in its Annual Report on Form 10-K for the

year ended December 31, 2023:

On March 18, 2024, our board of directors determined and approved our estimated net asset value ("NAV") of $167.3 million and resulting NAV per share of common stock ("NAV per Share") of $9.84, both as of December 31, 2023. Our estimated NAV and resulting NAV per Share are based upon the estimated fair values of our assets and liabilities as of December 31, 2023 and are effective as of March 18, 2024. In the    calculation of our NAV, no allocation of value was made to the Associate General Partner's Subordinated Profits Interests because the NAV per Share did not exceed an aggregate $10.00 price per share plus a cumulative, pre-tax non-compounded annual return of 7.0% as of December 31, 2023. In connection with our Offerings, the Associate General Partner contributed (i) cash of $12.9 million and (ii) aggregate equity interests of 48.6% in the Brownmill Joint Venture which were aggregately valued at $4.8 million, to  our           Operating Partnership in exchange for 177 Subordinated Profits Interests, at a cost of $100,000 per unit, with an aggregate value of $17.7 million.

69.     REIT III described its NAV as follows in its Annual Report on Form 10-K for the

year ended December 31, 2023:

On March 18, 2024, our Board of Directors determined and approved our estimated net asset value ("NAV") of $128.4 million and resulting NAV per share of common stock ("NAV per Share") of $9.93, both as of December 31, 2023. Our estimated NAV and resulting NAV per Share are based upon the estimated fair values of our assets and liabilities as of December 31, 2023 and are effective as of March 18, 2024.

However, these NAVs likely do not reflect the value that common shareholders would realize if the Lightstone REITs were listed on a national stock exchange, merged with an exchange-listed company or liquidated.  As each of the REITs stated in its 2023 Annual Report:

Our estimated NAV and resulting NAV per Share was calculated as of a particular point in time. Accordingly, our estimated NAV and resulting NAV per Share will fluctuate over time in response to developments related to individual assets in the portfolio and the management of those assets and in response to the real estate and finance markets. There is no assurance of the extent to which the current estimated

valuation should be relied upon for any purpose after its effective date regardless
that it may be published on any statement issued by us or otherwise.

70.     Further, shares of the Lightstone REITs have reportedly been bought and sold in

online secondary markets during 2024 for the following prices: REIT I, $5.50 per share; REIT II,

$3.20 per share; and REIT III, $5.25 per share – thereby suggesting that the Lightstone REITs are

worth far less than their reported estimated NAV per share due to illiquidity and the elimination

of the duration provision.  Indeed, in late 2023 and early 2024, REIT II itself extended a so-called

"self tender" offer in which it offered to purchase up to 860,000 shares of its common stock from

public shareholders at a price of $6.00 a share.

71.     The Lightstone REITs appear to have taken no steps whatsoever toward achieving

a liquidity event.  Each of the Lightstone REITs has stated in its 2023 Annual Report on Form 10-

K as follows: "We may seek to list our Common Shares for trading on a national securities

exchange only if a majority of our independent directors believe listing would be in the best interest

of our stockholders. We do not intend to list our Common Shares at this time."

72.     Plaintiffs and the Class are therefore left as essentially permanent investors in a

REIT version of the Eagles' "Hotel California", with no prospects, timeline or plan for any exit,

and no precise insight as to what their shares will ultimately prove to be worth if they can ever

check out.

## CLASS ALLEGATIONS

73.     Plaintiffs bring this action as a class action pursuant to N.J. Court Rule 4:32-1.  The

Class in this action ("Class") consists of all persons who own or have owned shares of the

Lightstone REITs between October 10, 2022 and the present (the "Class Period").  Excluded from

the Class are Defendants and their officers, directors, and/or employees.

74.     At least thousands of persons are believed to be members of the putative Class, and those persons or entities are geographically dispersed.  Therefore, joinder is impracticable pursuant to R. 4:32-1(a)(1).

75.     Common issues of fact or law predominate over individual issues within the meaning of  R. 4:32-1(a)(2).   Common issues of law and fact include but are not limited to:

(a).     whether the 2022 Proxy Statements and the 2022 FAQs (as defined above) were materially false, misleading and/or incomplete;

(b).     whether the Defendants breached fiduciary duties to Plaintiffs and the Class by recommending the 2023 Charter Amendments and taking steps resulting in the elimination of valuable shareholder rights;

(c).     whether the Defendants breached the contractual terms of the Legacy Charters; and

(d).      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

76.     Plaintiffs' claims are typical of, and not antagonistic to the interests of, the Class with the meaning of R. 4:32-1(a)(3).

77.     Plaintiffs have retained competent counsel experienced with class actions and complex litigation and intend to vigorously prosecute this action.  The representative parties will fairly and adequately protect the interests of the Class. See R. 4:32-1(a)(4).

78.     The prosecution of separate actions by or against individual members of the Class could create the risk of inconsistent or varying adjudications and/or adjudications with respect to individual members that would as a practical matter be dispositive of the interest of other Class

members. See R. 4:32-1(b)(1).   Indeed, a class action is the only method by which Plaintiffs and

the Class can efficiently seek redress and obtain a uniform adjudication of their claims.

79.    The size of individual damages is small in comparison to the complexity and scope

of the Defendants' alleged unlawful conduct.  Plaintiffs do not anticipate any difficulties in the

management of this action as a class action.

## CAUSES OF ACTION

### COUNT I

**(Against the Director Defendants for Breaches of Fiduciary Duties in Their
Capacities as Directors)**

80.    Plaintiffs incorporate each and every allegation set forth above as if fully set forth

herein.

81.    By reason of the Director Defendants' positions with the Lightstone REITs as

officers and/or directors, as well as via the express provisions of the Lightstone REITs' Legacy

Charters, said individuals were in a fiduciary relationship with Plaintiffs and the other public

stockholders of the Lightstone REITs, and owed Plaintiffs and shareholders of the Lightstone

REITs the duties of loyalty, good faith, care, and candor.

82.    The Director Defendants' fiduciary duties required them to: (a) act independently

to protect the interests of the Lightstone REITs' public stockholders; (b) adequately ensure that no

conflicts of interest exist between the Director Defendants' own interests and their fiduciary

obligations, and, if such conflicts existed, to ensure that all conflicts were resolved in the best

interests of the Lightstone REITs' public stockholders rather than the Director Defendants' own

interests of those of insiders such as Defendant Lichtenstein; (c) take reasonable steps to achieve

liquidity for the shareholders of the Lightstone REITs as required under their Legacy Charters; (d)

28

ensure that all communications with shareholders, including without limitation the 2022 Proxy statements and the 2022 FAQs, were accurate, complete and truthful; and (e) make recommendations to Plaintiffs and the Class that were based on a good faith assessment of the best interests of such shareholders.

83.    By virtue of the conduct alleged herein, the Director Defendants have violated their fiduciary duties owed to the public stockholders of the Lightstone REITs. By the acts, transactions, and courses of conduct alleged herein, the Director Defendants have acted disloyally and in bad faith by, *inter alia*, recommending the 2023 Charter Amendments that were not in the shareholders best interests and disseminating the 2022 Proxy Statements and the 2022 FAQs that were false, misleading and/or incomplete.

84.    Pursuant to their duties of good faith, loyalty, and care, Defendants were also under a duty of candor/disclosure to ensure that Lightstone REITs shareholders were provided with full and complete information in the 2022 Proxy Statements and the 2022 FAQs concerning the matters that a reasonable shareholder would deem important under the circumstances, and not to deceive Lightstone REITs shareholders.

85.    By the acts, transactions, and courses of conduct alleged herein, the Director Defendants, individually and as part of a common plan or scheme, and in breach of their fiduciary duty of candor/disclosure to Plaintiffs and the Class, unfairly deprived Plaintiffs and the Class of their ability to make intelligent and informed decisions about whether to vote in favor of the 2023 Charter Amendments, and deceived Plaintiffs and the Class.

86.    Although not required to establish a breach of the fiduciary duties set forth in the Lightstone REITs' Legacy Charters, Plaintiffs also allege that the Director Defendants engaged in active and deliberate dishonesty by knowingly failing to fulfill their fiduciary obligation of full

and candid disclosure towards Plaintiffs and the Class and withholding material information from them, and by making recommendations and entering into a course of business that served the interests of Defendant Lichtenstein, not Plaintiffs and the Class.

87.     As a result of the actions of the Director Defendants, Plaintiffs and the Class will suffer injury in that they: (a) have not and will not be able to liquidate their shares for fair value; (b) have been deprived of valuable rights via the 2023 Charter Amendments; (c) did not receive all material information necessary to vote on the 2023 Charter Amendments and (d) have suffered and continue to suffer a diminution in the value of their shares.

## COUNT II

### (Against the Lightstone Advisors for Breaches of Fiduciary Duties)

88.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

89.     The Lightstone REITs' Legacy Charters provide for obligations running from the Lightstone Advisors to Plaintiffs and the Class, including without limitation a fiduciary duty to the stockholders of the Lightstone REITs.   As a result, the Lightstone Advisors were in a fiduciary relationship with Plaintiffs and the other public stockholders of the Lightstone REITs, and owed Plaintiffs and shareholders of the Lightstone REITs the duties of loyalty, good faith, care, and candor.

90.     At relevant times, the Lightstone Advisors stood on both sides of the transaction with respect to the adoption of the 2023 Charter Amendments.  The Lightstone Advisors are owned and controlled by Defendant Lichtenstein, who stands to benefit from the 2023 Charter Amendments, but the Lightstone Advisors also owe fiduciary obligations to Plaintiffs and the

30

Class, who have been and stand to be harmed by the adoption of the 2023 Charter Amendments as set forth above.

91.     The Lightstone Advisors' fiduciary duties of good faith, loyalty, and care required them to: (a) act independently to protect the interests of the Lightstone REITs' public stockholders; (b) adequately ensure that no conflicts of interest exist between the Lightstone Advisors' own interests, or those of other insiders such as Defendant Lichtenstein, and their fiduciary obligations, and, if such conflicts existed, to ensure that all conflicts were resolved in the best interests of the Lightstone REITs' public stockholders rather than the Lightstone Advisors' own interests or those of insiders such as Defendant Lichtenstein; (c) take reasonable steps to achieve liquidity for the shareholders of the Lightstone REITs as required under their Legacy Charters; (d) ensure that all communications with shareholders, including without limitation the 2022 Proxy statements and the 2022 FAQs, were accurate, complete and truthful; and (e) make recommendations to Plaintiffs and the Class that were based on a good faith assessment of the best interests of such shareholders (and refrain from making recommendations or taking steps detrimental to the interests of Lightstone REITs shareholders).

92.     By virtue of the conduct alleged herein, the Lightstone Advisors have violated their fiduciary duties owed to the public stockholders of the Lightstone REITs. By the acts, transactions, and courses of conduct alleged herein, the Lightstone Advisors have acted disloyally and in bad faith by, *inter alia*, recommending the 2023 Charter Amendments that were not in the shareholders best interests and disseminating or assisting in disseminating the 2022 Proxy Statements and the 2022 FAQs that were false, misleading and/or incomplete.

93.     Pursuant to their duties of good faith, loyalty, and care, Defendants were also under a duty of candor/disclosure to ensure that Lightstone REITs stockholders were provided with full

and complete information in the 2022 Proxy Statements and the 2022 FAQs concerning the matters that a reasonable shareholder would deem important under the circumstances, and not to mislead Lightstone REITs shareholders.

94.     By the acts, transactions, and courses of conduct alleged herein, the Lightstone Advisors, individually and as part of a common plan or scheme, and in breach of their fiduciary duty of candor/disclosure to Plaintiffs and the Class, unfairly deprived Plaintiffs and the Class of their ability to make intelligent and informed decisions about whether to vote in favor of the 2023 Charter Amendments, and deceived Plaintiffs and the Class.

95.     Although not required to establish a breach of the fiduciary duties set forth in the Lightstone REITs' Legacy Charters, Plaintiffs also allege that the Lightstone Advisors  engaged in active and deliberate dishonesty by knowingly failing to fulfill their fiduciary obligation of full and candid disclosure towards Plaintiffs and the Class and withholding material information from them, and by making recommendations and entering into a course of business that served the interests of Defendant Lichtenstein, not Plaintiffs and the Class.

96.     As a result of the actions of the Director Defendants, Plaintiffs and the Class will suffer injury in that they: (a) have not and will not be able to liquidate their shares for fair value; (b) have been deprived of valuable rights via the 2023 Charter Amendments; (c) did not receive all material information necessary to vote on the 2023 Charter Amendments and (d) have suffered and continue to suffer a diminution in the value of their shares.

## COUNT III

**(Against The Director Defendants and the Lightstone Advisors for Declaratory Relief Pursuant to Courts and Judicial Proceedings Article of the Annotated Code of Maryland § 3-401, et seq.**

97.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

98.     The Director Defendants and the Lightstone Advisors (as defined above) breached their fiduciary duties owed directly to Plaintiffs and the Class in connection with their recommendations to approve, and other actions concerning the adoption of, the 2023 Charter Amendments, and are liable therefor.

99.     As a result of these Defendants' conduct as herein alleged, Plaintiffs and the other members of the Class have suffered and/or will, in the future, suffer damages and harm, including harm for which they have no adequate remedy at law.

100.    Pursuant to Courts and Judicial Proceedings Article of the Annotated Code of Maryland § 3-412, Plaintiffs demand a declaration that: (a) the Director Defendants and the Lightstone Advisors have breached their fiduciary duties owed directly to Plaintiffs and the Class; (b) the 2023 Charter Amendments were adopted in breach of Defendants' fiduciary duties owed directly to Plaintiffs and the Class and are therefore unlawful and unenforceable, and that the 2023 Charter Amendments should be rescinded and invalidated and the parties restored to their original positions under the Legacy Charters; and (c) Plaintiffs and the stockholders should be granted such other and further relief as the nature of their cause may require.

101.    Additionally, in accordance with the fiduciary duties of good faith, care, and loyalty, the Director Defendants and the Lightstone Advisors owed a duty of candor and were

required to provide the Company's stockholders with all material information concerning the Transactions, and to avoid making incomplete partial disclosures regarding the Transactions.

102.    As alleged herein, the Director Defendants and the Lightstone Advisors knowingly, deliberately, and dishonestly breached their fiduciary duties to Plaintiffs and the Class by causing materially misleading and incomplete information concerning the 2023 Charter Amendments to be disseminated to the Lightstone REITs' public stockholders.

103.    The misrepresentations and omissions in the Proxy Statement are material, and Plaintiffs and the Class were deprived of their right to cast an informed vote.   Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

104.    Plaintiffs have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiffs be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT IV**

**(Against All Defendants For Breach
Of Contractual Obligations Under The Legacy Charters)**

105.    Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

106.    The Lightstone REITs' Legacy Charters are contracts among the State of Maryland, the Lightstone REITs, and the Lightstone REITs' stockholders, the Class Members in this litigation.    The Legacy Charters also provided for obligations running from the Lightstone Advisors and the Director Defendants to Plaintiffs and the Class, including without limitation   a fiduciary duty to the stockholders of the Lightstone REITs, and also including, with respect to the

Director Defendants only, a specific fiduciary duty to supervise the relationship of the Lightstone REITs with the Lightstone REITs' Advisors.

107. The contractual rights of Plaintiffs and the Class represent a bargained-for expansion of the rights otherwise available and accruing to the Lightstone REITs' common shareholders under Maryland law. These contractual rights are consistent with the requirements of the NASAA REIT Guidelines, as further discussed above.

108. Defendants have disregarded and announced their intention to disregard the rights of the Plaintiffs and the Class under the Legacy Charters.

109. Plaintiffs and the Class have been and/or will be damaged by Defendants' breach of contract. Plaintiffs and the Class performed all of their obligations under the contract.

110. Additionally, Defendants' conduct as alleged herein breached the Legacy Charters by violating the implied duty of good faith and fair dealing under Maryland law. By intentionally depriving Plaintiffs and the Class of the benefit of their bargain as set forth in the Legacy Charters, they breached the implied duty.

111. Plaintiff and the Class are entitled to a declaratory judgment that Defendants are in breach of the implied duty of good faith and fair dealing, and are entitled to rescission of the 2023 Charter Amendments

## JURY DEMAND

112. Plaintiffs demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand relief in their favor and in favor of the Class and against

Defendants as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying

Plaintiffs as Class representatives;

B.      Rescinding and unwinding the 2023 Charter Amendments;

C.      Declaring that the Director Defendants breached their fiduciary duties to Plaintiffs

and the Class.

D.      Declaring that Defendants breached the terms of the Legacy Charters and violated

the implied duty of good faith and fair dealing;

E.      Awarding compensatory damages in favor of Plaintiffs and the Class for all losses

and damages suffered as a result of the wrongdoing alleged herein by the Defendants;

F.      Awarding Plaintiffs the costs of this action, including a reasonable allowance for

the fees and expenses of Plaintiffs' attorneys and experts; and

G.      Granting such other and further equitable relief as Plaintiffs' and the Class's causes

may require.

Dated: September 17, 2024                          Respectfully Submitted,

                                                   **LEVI & KORSINSKY, LLP**


                                                   _____ /s/ Donald J. Enright_____
**OF COUNSEL**                                     Donald J. Enright (Bar No. 036841996)
                                                   Elizabeth K. Tripodi (pro hac vice forthcoming)
**LAW OFFICE OF**                                  Jordan A. Cafritz  (pro hac vice forthcoming)
**CHRISTOPHER J. GRAY, P.C.**                      1101 Vermont Ave. NW Suite 700.
Christopher J. Gray (pro hac vice forthcoming)     Washington, D.C. 20005
60 East 42nd Street, 46th Floor                    Tel: 202-524-4290
New York, NY 10165                                 denright@zlk.com
Tel: (212) 838-3221                                jcafritz@zlk.com
chris@investorlawyers.net

                                                   *Attorneys for Plaintiffs*

## Certification Concerning Other Actions and Potentially Liable Persons

I, Donald J. Enright, hereby certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit.  In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated: September 17, 2024                          Respectfully Submitted,

                                                    _____ /s/ Donald J. Enright_____
                                                    Donald J. Enright

## Certification of Compliance with Rule 1:38-7(c)

I, Donald J. Enright, hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: September 17, 2024                              Respectfully Submitted,

                                                      _____ */s/ Donald J. Enright*_____
                                                      Donald J. Enright

# Civil Case Information Statement

**Case Details: OCEAN | Civil Part Docket# L-002385-24**

**Case Caption:** AYER KENNETH  VS LIGHTSTONE VALUE
PLU S I INC.

**Case Initiation Date:** 09/17/2024

**Attorney Name:** DONALD JAMES ENRIGHT

**Firm Name:** LEVI & KORSINSKY LLP

**Address:** 1101 VERMONT AVE., NW STE 700
WASHINGTON DC 20005

**Phone:** 2025244292

**Name of Party:** PLAINTIFF : Ayer, Kenneth

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** OTHER Breach of Fiduciary Duty

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Kenneth Ayer?** NO

**Are sexual abuse claims alleged by: Martha Harvey?** NO

**Are sexual abuse claims alleged by: Larry Melton?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/17/2024                                                    /s/ DONALD JAMES ENRIGHT
Dated                                                        Signed

# EXHIBIT B

## SUMMONS

Attorney(s) <u>Levi & Korsinsky LLP</u>

Office Address <u>1101 Vermont Ave. NW Suite 700</u>

Town, State, Zip Code <u>Washington, D.C. 20005</u>

Telephone Number <u>202-524-4290</u>

Attorney(s) for Plaintiff <u>Donald J. Enright</u>

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

      Plaintiff(s)

   vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

      Defendant(s)

## Superior Court of New Jersey

<u>Ocean</u>    County

<u>Civil Law</u>   Division

Docket No: <u>OCN-L-002385-24</u>

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

                             /s/ Michella M. Smith esq.
                              Clerk of the Superior Court

DATED:    <u>10/08/2024</u>

Name of Defendant to Be Served: <u>LIGHTSTONE VALUE PLUS REIT I, INC.</u>

Address of Defendant to Be Served: <u>1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701</u>

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# EXHIBIT C

**SUMMONS**

Attorney(s) <u>Levi & Korsinsky LLP</u>

Office Address <u>1101 Vermont Ave. NW Suite 700</u>

Town, State, Zip Code <u>Washington, D.C. 20005</u>

_____

Telephone Number <u>202-524-4290</u>

Attorney(s) for Plaintiff <u>Donald J. Enright</u>

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

     Plaintiff(s)

  vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

     Defendant(s)

# Superior Court of New Jersey

<u>Ocean</u>    County

<u>Civil Law</u>   Division

Docket No: <u>OCN-L-002385-24</u>

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

                                 /s/ Michella M. Smith esq.

                                    Clerk of the Superior Court

DATED:    <u>10/08/2024</u>

Name of Defendant to Be Served:  LIGHTSTONE VALUE PLUS REIT LLC

Address of Defendant to Be Served:  1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701

# EXHIBIT D

## SUMMONS

Attorney(s) <u>Levi & Korsinsky LLP</u>

Office Address <u>1101 Vermont Ave. NW Suite 700</u>

Town, State, Zip Code <u>Washington, D.C. 20005</u>

Telephone Number <u>202-524-4290</u>

Attorney(s) for Plaintiff <u>Donald J. Enright</u>

<u>KENNETH N. AYER, MARTHA</u>

<u>HARVEY and LARRY MELTON</u>

Plaintiff(s)

vs.

<u>LIGHTSTONE VALUE PLUS REIT I,</u>

<u>et al.</u>

Defendant(s)

# Superior Court of New Jersey

<u>Ocean</u>            County

<u>Civil Law</u>         Division

Docket No: <u>OCN-L-002385-24</u>

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

<u>/s/ Michella M. Smith esq.</u>

Clerk of the Superior Court

DATED:     <u>10/08/2024</u>

Name of Defendant to Be Served: <u>LIGHTSTONE VALUE PLUS REIT II, INC.</u>

Address of Defendant to Be Served: <u>1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701</u>

# EXHIBIT E

## SUMMONS

Attorney(s) <u>Levi & Korsinsky LLP</u>

Office Address <u>1101 Vermont Ave. NW Suite 700</u>

Town, State, Zip Code <u>Washington, D.C. 20005</u>

_____

Telephone Number <u>202-524-4290</u>

Attorney(s) for Plaintiff <u>Donald J. Enright</u>

<u>KENNETH N. AYER, MARTHA</u>

<u>HARVEY and LARRY MELTON</u>

Plaintiff(s)

vs.

<u>LIGHTSTONE VALUE PLUS REIT I,</u>

<u>et al.</u>

Defendant(s)

### Superior Court of New Jersey

<u>Ocean</u>         County

<u>Civil Law</u>      Division

Docket No: <u>OCN-L-002385-24</u>

### CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

<u>/s/ Michella M. Smith esq.</u>

Clerk of the Superior Court

DATED: _____<u>10/08/2024</u>_____

Name of Defendant to Be Served: <u>LIGHTSTONE VALUE PLUS REIT II LLC</u>

Address of Defendant to Be Served: <u>1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701</u>

# EXHIBIT F

## SUMMONS

Attorney(s) Levi & Korsinsky LLP

Office Address  1101 Vermont Ave. NW Suite 700

Town, State, Zip Code  Washington, D.C. 20005

Telephone Number  202-524-4290

Attorney(s) for Plaintiff  Donald J. Enright

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

　　　　Plaintiff(s)

　　vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

　　　　Defendant(s)

**Superior Court of**
**New Jersey**

Ocean          County

Civil Law        Division

Docket No: OCN-L-002385-24

**CIVIL ACTION**
**SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

　　　　　　　　　　　　　　　　/s/ Michella M. Smith esq.

　　　　　　　　　　　　　　　　Clerk of the Superior Court

DATED:　　　10/08/2024

Name of Defendant to Be Served:  LIGHTSTONE VALUE PLUS REIT III, INC.

Address of Defendant to Be Served:  1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701

# EXHIBIT G

**SUMMONS**

Attorney(s) Levi & Korsinsky LLP

Office Address  1101 Vermont Ave. NW Suite 700

Town, State, Zip Code  Washington, D.C. 20005

Telephone Number  202-524-4290

Attorney(s) for Plaintiff  Donald J. Enright

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

      Plaintiff(s)

  vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

      Defendant(s)

## Superior Court of New Jersey

Ocean_____ County

Civil Law_____ Division

Docket No:  OCN-L-002385-24_____

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

                       /s/ Michella M. Smith esq.

                       Clerk of the Superior Court

DATED:  _____10/08/2024_____

Name of Defendant to Be Served:  LIGHTSTONE VALUE PLUS REIT III LLC

Address of Defendant to Be Served:  1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701

# EXHIBIT H

**SUMMONS**

Attorney(s) Levi & Korsinsky LLP

Office Address  1101 Vermont Ave. NW Suite 700

Town, State, Zip Code  Washington, D.C. 20005

Telephone Number  202-524-4290

Attorney(s) for Plaintiff  Donald J. Enright

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

　　　Plaintiff(s)

vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

　　　Defendant(s)

# Superior Court of
# New Jersey

Ocean       County

Civil Law       Division

Docket No: OCN-L-002385-24

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

　　　　　　　　　　　　　/s/ Michella M. Smith esq.

　　　　　　　　　　　　　Clerk of the Superior Court

DATED:　　10/08/2024

Name of Defendant to Be Served:  YEHUDA I. ANGSTER

Address of Defendant to Be Served:  1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# EXHIBIT I

SUMMONS

Attorney(s) <u>Levi & Korsinsky LLP</u>
Office Address <u>1101 Vermont Ave. NW Suite 700</u>
Town, State, Zip Code <u>Washington, D.C. 20005</u>

Telephone Number <u>202-524-4290</u>
Attorney(s) for Plaintiff <u>Donald J. Enright</u>
KENNETH N. AYER, MARTHA
HARVEY and LARRY MELTON
        Plaintiff(s)

        vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.
        Defendant(s)

## Superior Court of New Jersey

<u>Ocean</u>        County
<u>Civil Law</u>        Division
Docket No: <u>OCN-L-002385-24</u>

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

   The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

   If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

                                        <u>/s/ Michella M. Smith esq.</u>
                                        Clerk of the Superior Court

DATED: <u>10/08/2024</u>

Name of Defendant to Be Served: <u>HOWARD E. FRIEDMAN</u>

Address of Defendant to Be Served: <u>1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701</u>

# EXHIBIT J

### SUMMONS

Attorney(s) Levi & Korsinsky LLP

Office Address  1101 Vermont Ave. NW Suite 700

Town, State, Zip Code  Washington, D.C. 20005

Telephone Number  202-524-4290

Attorney(s) for Plaintiff  Donald J. Enright

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

      Plaintiff(s)

    vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

      Defendant(s)

## Superior Court of
## New Jersey

Ocean_____ County

Civil Law_____ Division

Docket No: OCN-L-002385-24_____

## CIVIL ACTION
## SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

                      /s/ Michella M. Smith esq.
                      Clerk of the Superior Court

DATED:     10/08/2024

Name of Defendant to Be Served:  DAVID LICHTENSTEIN

Address of Defendant to Be Served: 1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701

# EXHIBIT K

**SUMMONS**

Attorney(s) Levi & Korsinsky LLP

Office Address  1101 Vermont Ave. NW Suite 700

Town, State, Zip Code  Washington, D.C. 20005

Telephone Number  202-524-4290

Attorney(s) for Plaintiff  Donald J. Enright

KENNETH N. AYER, MARTHA

HARVEY and LARRY MELTON

Plaintiff(s)

vs.

LIGHTSTONE VALUE PLUS REIT I,

et al.

Defendant(s)

**Superior Court of New Jersey**

Ocean            County

Civil Law        Division

Docket No: OCN-L-002385-24

**CIVIL ACTION SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

/s/ Michella M. Smith esq.

Clerk of the Superior Court

DATED:        10/08/2024

Name of Defendant to Be Served:  GEORGE R. WHITTEMORE

Address of Defendant to Be Served: 1985 CEDAR BRIDGE AVENUE, SUITE 1 LAKEWOOD NJ 08701

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# EXHIBIT L

Jeremy B. Stein, Esq. (03225-2006)
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA, LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
(201) 441-9056
*Attorneys for Defendants*

| | |
|---|---|
| KENNETH N. AYER, MARTHA HARVEY, and LARRY MELTON, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>LIGHTSTONE VALUE PLUS REIT I, INC., LIGHTSTONE VALUE PLUS REIT LLC, LIGHTSTONE VALUE PLUS REIT II, INC., LIGHTSTONE VALUE PLUS REIT II LLC, LIGHTSTONE VALUE PLUS REIT III, INC., LIGHTSTONE VALUE PLUS REIT III LLC, YEHUDA I. ANGSTER, HOWARD E. FRIEDMAN, DAVID LICHTENSTEIN, ALAN RETKINSKI, and GEORGE R. WHITTEMORE,<br><br>    *Defendants.* | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION: OCEAN COUNTY**<br><br>Docket No.  OCN-L-002385-24<br><br>Civil Action<br><br>**NOTICE OF FILING OF**<br>**NOTICE OF REMOVAL** |

  **PLEASE TAKE NOTICE** that this action has been removed to the United States District Court for the District of New Jersey. Attached hereto as Exhibit A is a copy of the Notice of Removal filed in the United States District Court for the District of New Jersey effecting such removal.

  **PLEASE TAKE FURTHER NOTICE** that, pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal in the United States District Court for the District of New Jersey, together with the filing of a copy of such Notice of Removal with this Court, effects the removal of this action and this Court may proceed no further unless and until the case is remanded.

Dated: November 7, 2024

_s/ Jeremy B. Stein_____

Jeremy B. Stein, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
201-441-9056
jstein@hdrbb.com

John F. Baughman
Andrew C. Bosse
Alexander R. Kalyniuk
**BAUGHMAN KROUP BOSSE PLLC**
One Liberty Plaza – 46th Floor
NEW YORK, NY 10006
(212) 548-3212

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2024, a true and correct copy of this Notice of Removal was filed with the Court via its CM/ECF system, which automatically sends notice of the filing to all persons registered to use that system. I further certify that on this 7th day of November, 2024, I caused to be sent a true and correct copy of the Notice of Removal to the below listed counsel via FedEx and email where indicated, and to the Clerk of the Superior Court of New Jersey, Law Division, Ocean County via electronic filing on eCourts:

Levi & Korsinsky, LLP
Donald J. Enright
Elizabeth K. Tripodi
Jordan A. Cafritz
1101 Vermont Ave. NW Suite 700
Washington, D.C. 20005
denright@zlk.com
jcafritz@zlk.com

*Attorneys for Plaintiffs*

Law Office of Christopher Gray, P.C.
Christopher J. Gray
60 East 42nd Street, 46th Floor
New York, NY 10165
chris@investorlawers.net

*Of Counsel for Plaintiffs*

      _s/ Jeremy B. Stein_____
Jeremy B. Stein, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
201-441-9056
jstein@hdrbb.com

*Attorneys for Defendants*